UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| JANIS GRIFFIN, INDIVIDUALLY AND AS DAUGHTER OF CHARLES W. GRIFFIN, DECEASED;<br><br>            Plaintiff,<br><br>   vs.<br><br>CHARLES G. BREED, CHARLES R. BREED, WHITNEY V. BREED, JANIS R. BREED, LESLIE KOBATA, IN HIS INDIVIDUAL CAPACITY AS HAWAII STATE OFFICIAL;<br><br>           Defendants. | CIV. NO. 22-00503 LEK-RT |

**ORDER: GRANTING IN PART AND DENYING IN PART DEFENDANT LESLIE KOBATA'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S FIRST AMENDED COMPLAINT FILED MARCH 17, 2023, WITH PREJUDICE; GRANTING IN PART AND DENYING IN PART DEFENDANTS C.G. BREED, C.R. BREED, WHITNEY BREED, AND JANIS BREED'S MOTION TO DISMISS FIRST AMENDED COMPLAINT; SUA SPONTE DISMISSING PLAINTIFF'S SECOND AMENDED COMPLAINT; AND DENYING PLAINTIFF'S PETITION FOR CHANGE OF VENUE**

On March 29, 2023, Defendant Leslie Kobata, in his individual capacity as a Hawai`i state official ("Kobata"), filed his Motion for Partial Dismissal of Plaintiff's First Amended Complaint Filed March 17, 2023, with Prejudice ("Kobata Motion"). [Dkt. no. 18.] On March 31, 2023, Defendants Charles G. Breed ("C.G. Breed"), Charles R. Breed ("C.R. Breed"), Whitney V. Breed ("Whitney Breed"), and Janis R. Breed ("Janis Breed" and collectively "Breed Defendants") filed their Motion to Dismiss First Amended Complaint ("Breed Motion").

[Dkt. no. 19.]  On April 17, 2023, pro se Plaintiff Janis Griffin, individually and as daughter of Charles W. Griffin, deceased ("Plaintiff"), filed her memoranda in opposition to the Breed Motion ("Breed Opposition") and the Kobata Motion ("Kobata Opposition").  [Dkt. nos. 22, 23.]  Kobata and the Breed Defendants filed their respective replies on June 23, 2023 ("Kobata Reply" and "Breed Reply").  [Dkt. nos. 24, 25.]

The Court finds these matters suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules").  On June 30, 2023, the Court issued an entering order informing the parties of the Court's rulings on the respective motions ("6/30 EO").  [Dkt. no. 26.] This Order supersedes the 6/30 EO.  The Kobata Motion and the Breed Motion are hereby granted in part and denied in part for the reasons set forth below.

<u>**BACKGROUND**</u>

The operative pleading for the Breed Motion and the Kobata Motion is Plaintiff's First Amended Complaint, which was filed on March 17, 2023.  [Dkt. no. 14.]  Plaintiff alleges she is the sole child of Charles W. Griffin ("C.W. Griffin"), who lived in a condominium in Honolulu, Hawai`i.  See First Amended Complaint at ¶¶ 1-3.  In 2013, C.W. Griffin purchased the condominium ("the Property") as trustee of a trust created in

2

2001 ("the Trust").  The Property's deed and transfer certificate of title ("TCT") was subsequently recorded in the State of Hawai`i Bureau of Conveyances ("BOC") Land Court registry.  But, according to Plaintiff the TCT is now missing from the registry.  See id. at ¶¶ 50–51.

Plaintiff states C.G. Breed, C.W. Griffin's grandson, sought an issuance of a Quitclaim Deed for the conveyance of the Property.  See id. at ¶¶ 3, 60.  A Quitclaim Deed was prepared even though C.G. Breed allegedly lacked a power of attorney to act on behalf of C.W. Griffin.  See id. at ¶ 61.  Plaintiff alleges the Quitclaim Deed accomplished three things: (1) granted C.G. Breed legal capacity as the successor trustee of the Trust; (2) granted C.G. Breed authority to sell the Property; and (3) conveyed the Property into the Trust.  See id. at ¶ 64.  Plaintiff states Kobata, the registrar of the BOC/Land Court, removed the certificate of title of the Property from the BOC/Land Court registry, which allowed the Quitclaim Deed to be registered.  See id. at ¶¶ 6, 79–81.

In addition, the Breed Defendants, who are all Arizona residents, see id. at ¶¶ 15–18, allegedly lured and/or abducted C.W. Griffin from his Hawai`i home and transported him by air to Arizona against his will and held him at the residence of C.R. Breed and Janis Breed, see id. at ¶¶ 35–36.  This occurred prior to September 2016.  See id. at ¶ 37.  On December 7, 2020, C.W.

3

Griffin died in Arizona and his death certificate states his place of residence before his death was at C.R. Breed and Janis Breed's residence.  See id. at ¶¶ 44, 49.

Plaintiff asserts the following claims: (1) a claim against Kobata alleging that his failures to comply with the rules and statutes applicable to the BOC/Land Court resulted in the illegal transfer of the Property ("Count I"); (2) a claim against Kobata asserting a facial and as-applied challenge to the BOC/Land Court's policy permitting the transfer of property prior to the registration of the deed of conveyance because it leads to the deprivation of citizens' property, in violation of the petition clause of the First Amendment ("Count II"); (3) a claim against Kobata asserting a facial and as-applied challenge to the BOC/Land Court's policy because it violates the due process clause of the Fourteenth Amendment ("Count III"); (4) a claim for intentional infliction of emotional stress ("IIED") against the Breed Defendants ("Count 4"); and (5) a wrongful death claim against the Breed Defendants ("Count V").  Plaintiff alleges the Court has jurisdiction over Kobata based on federal question jurisdiction and has jurisdiction over the Breed Defendants based on diversity jurisdiction.  See id. at ¶¶ 10-11.

In the 6/30 EO, the parties were informed that all claims in the First Amended Complaint were dismissed without

prejudice, and the Court stated that "[a] written order will follow that will supersede these rulings" and "Plaintiff [was] not to file her second amended complaint until after the written order is filed." [6/30 EO at PageID.263.] Despite the Court's instruction, Plaintiff filed her Second Amended Complaint and Demand for Jury Trial ("Second Amended Complaint") on August 2, 2023. [Dkt. no. 28.] Also on August 2, 2023, Plaintiff filed her Petition for Change of Venue ("Petition"). [Dkt. no. 29.]

**DISCUSSION**

**I.   Standing**

"Because the Constitution limits [a federal court's] jurisdiction to cases and controversies, standing is an essential and unchanging requirement." In re E. Coast Foods, Inc., 66 F.4th 1214, 1217–18 (9th Cir. 2023) (citation and internal quotation marks omitted). "[A] party must establish an Article III case or controversy before [a federal court] exert[s] subject matter jurisdiction." Id. at 1218 (citing Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004) ("A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction.") (citation omitted))).

To have standing, i.e., "[t]o bring suit, a plaintiff must plead an injury in fact attributable to the defendant's

5

conduct and redressable by the court." Tyler v. Hennepin Cnty.,
143 S. Ct. 1369, 1374 (2023) (citation omitted). "An 'injury in
fact' is 'an invasion of a legally protected interest which is
(a) concrete and particularized and (b) actual or imminent, not
conjectural or hypothetical.'" Van v. LLR, Inc., 61 F.4th 1053,
1063 (9th Cir. 2023) (quoting Lujan v. Defs. of Wildlife, 504
U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

        Here, Counts I through III assert claims relating to
the Property.  The Court notes that those three claims are
ambiguous for numerous reasons.  Count I is a claim against
Kobata, but Plaintiff does not allege what statute or law Kobata
violated.  Counts II and III are facial and as-applied
challenges to a BOC policy but Plaintiff does not name the BOC
as a defendant.  More importantly, though, Plaintiff does not
allege that she has a legal interest in the Property.  Notably,
she brings this action in her individual capacity and as the
daughter of C.W. Griffin, but she does not allege that, for
example, she was a trustee of C.W. Griffin's estate or his
guardian ad litem.  Thus, to the extent that she seeks recourse
for the Property's conveyance to some of the Breed Defendants,
she does not allege a legally-protected interest and, therefore,
she lacks standing.  See Tingley v. Ferguson, 47 F.4th 1055,
1069 (9th Cir. 2022) ("The ordinary rule of standing is that a
party 'must assert his [or her] own legal rights and interests,

and cannot rest his [or her] claim to relief on the legal rights or interests of third parties.'" (quoting Warth v. Seldin, 422 U.S. 490, 499, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975))).  The same reasoning applies insofar as Plaintiff implicitly invokes third-party standing.  See Thole v. U.S. Bank N.A., 140 S. Ct. 1615, 1620 (2020) ("But in order to claim 'the interests of others, the litigants themselves still must have suffered an injury in fact, thus giving' them 'a sufficiently concrete interest in the outcome of the issue in dispute.'" (citations and internal quotation marks omitted)).

        Moreover, if Plaintiff is attempting to bring claims on behalf of C.W. Griffin's estate, she would need to be the personal representative of the estate, and she cannot represent the estate pro se.  See Simon v. Hartford Life, Inc., 546 F.3d 661, 664 (9th Cir. 2008) ("[C]ourts have routinely adhered to the general rule prohibiting *pro se* plaintiffs from pursuing claims on behalf of others in a representative capacity." (citations omitted)).  Counts I, II, and III must therefore be dismissed.

## II.  <u>Personal Jurisdiction</u>

        Counts IV and V are alleged against the Breed Defendants.  The Breed Defendants argue this Court does not have personal jurisdiction over them.  See Breed Motion, Mem. in Supp. of Motion at 4.

7

The Ninth Circuit has stated:

> "A federal district court sitting in
> diversity has in personam jurisdiction over a
> defendant to the extent the forum state's law
> constitutionally provides." Metro. Life Ins. Co.
> v. Neaves, 912 F.2d 1062, 1065 (9th Cir. 1990).
> Since this case was brought in Hawaii, and
> "Hawai`i's long-arm statute allows Hawai`i courts
> to invoke personal jurisdiction to the full
> extent permitted by the due process clause,"
> Yamashita v. LG Chem, Ltd., 518 P.3d 1169, 1171
> (Haw. 2022), the statutory question here
> collapses into the constitutional one: a court
> sitting in Hawaii can exercise jurisdiction over
> [Plaintiff]'s claims against [the Breed
> Defendants] if doing so is consistent with the
> Fourteenth Amendment.  The Supreme Court's due
> process precedents have "recogniz[ed] two kinds
> of personal jurisdiction: general . . . and
> specific . . . jurisdiction." Ford [Motor Co. v.
> Mont. Eighth Jud. Dist. Ct.], 141 S. Ct. [1017,]
> 1024 [(2021)]. . . .

See Yamashita v. LG Chem, Ltd., 62 F.4th 496, 502 (9th Cir.

2023) (some alterations in Yamashita)  "General jurisdiction

exists when a defendant is domiciled in the forum state or his

activities there are 'substantial' or 'continuous and

systematic.'" Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316,

1320 (9th Cir. 1998) (quoting Helicopteros Nacionales de

Colombia, S.A. v. Hall, 466 U.S. 408, 414-16, 104 S. Ct. 1868,

1872-73, 80 L. Ed. 2d 404 (1984)).

The Ninth Circuit

> employ[s] a three-part test to assess whether a
> defendant has sufficient contacts with the forum
> state to be subject to specific personal
> jurisdiction:

> (1)   The non-resident defendant must
> purposefully direct his activities or
> consummate some transaction with the forum
> or resident thereof; or perform some act by
> which he purposefully avails himself of the
> privilege of conducting activities in the
> forum, thereby invoking the benefits and
> protections of its laws;
>
> (2)   the claim must be one which arises out
> of or relates to the defendant's forum-
> related activities; and
>
> (3)   the exercise of jurisdiction must
> comport with fair play and substantial
> justice, i.e. it must be reasonable.

Schwarzenegger [v. Fred Martin Motor Co.], 374
F.3d [797,] 802 [(9th Cir. 2004)].  The plaintiff
has the burden of proving the first two prongs.
CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d
1066, 1076 (9th Cir. 2011).  If he does so, the
burden shifts to the defendant to "set forth a
'compelling case' that the exercise of
jurisdiction would not be reasonable."  Id.
(quoting Burger King Corp. v. Rudzewicz, 471 U.S.
462, 477, 105 S. Ct. 2174, 85 L. Ed. 2d 528
(1985)).

> The exact form of our jurisdictional inquiry
> depends on the nature of the claim at
> issue. . . .  For claims sounding in tort, we
> . . . apply a "purposeful direction" test and
> look to evidence that the defendant has directed
> his actions at the forum state, even if those
> actions took place elsewhere.  [Schwarzenegger,
> 374 F.3d] at 802-03. . . .

Picot v. Weston, 780 F.3d 1206, 1211-12 (9th Cir. 2015).

> In analyzing whether a court has specific
> personal jurisdiction over a tort claim,
> [court's] apply [a] three-part "effects" test
> derived from Calder v. Jones, 465 U.S. 783, 104
> S. Ct. 1482, 79 L. Ed. 2d 804 (1984).  See
> Schwarzenegger, 374 F.3d at 803.  Under this
> test, a defendant purposefully directed his

activities at the forum if he: "(1) committed an
intentional act, (2) expressly aimed at the forum
state, (3) causing harm that the defendant knows
is likely to be suffered in the forum state."
Id. (quoting Dole Food Co. v. Watts, 303 F.3d
1104, 1111 (9th Cir. 2002).  In applying this
test, we must "look[] to the defendant's contacts
with the forum State itself, not the defendant's
contacts with persons who reside there."  Walden
[v. Fiore], 134 S. Ct. [1115,] 1122 [(9th Cir.
2014)].  Thus, a "mere injury to a forum resident
is not a sufficient connection to the forum."
Id. at 1125.  Rather, "an injury is
jurisdictionally relevant only insofar as it
shows that the defendant has formed a contact
with the forum State."  Id.

Id. at 1213-14 (some alterations in Picot).

General jurisdiction is inapplicable here because the

Breed Defendants are domiciled in Arizona, not Hawai`i, and

there is no evidence that they engage in substantial or

continuous and systematic activities in Hawai`i.  See Panavision

Int'l, 141 F.3d at 1320.  Counts IV and V are tort claims

against the Breed Defendants.  Accordingly, as to specific

jurisdiction, Plaintiff's allegations are too sparse to

determine whether any of the Breed Defendants purposely directed

his or her activities at Hawai`i.  See Picot, 780 F.3d at 1214.

For the IIED claim, Plaintiff alleges C.G. Breed and Whitney

Breed "lured C.W. Griffin from his Hawaii home, . . . and

transported him by air from Hawaii to Arizona," [First Amended

Complaint at ¶ 35,] but their contact with C.W. Griffin and the

alleged injury to him are not sufficient to allege a basis for

personal jurisdiction over the Breed Defendants, see Picot, 780 F.3d at 1214 (citing Walden, 134 S. Ct. at1122).

The Court notes that Plaintiff does allege C.G. Breed hired an attorney to get C.W. Griffin's marriage annulled in Hawai`i family court and C.G. Breed was then appointed as his guardian ad litem.  See First Amended Complaint at ¶¶ 54-55. Plaintiff also alleges C.G. Breed hired another Hawai`i law firm to draft and file the Quitclaim Deed.  See id. at ¶ 61. Although such actions could possibly establish personal jurisdiction over C.G. Breed, those alleged contacts with Hawai`i relate to Plaintiff's claim concerning the Property, not the IIED claim.  Thus, personal jurisdiction over C.G. Breed for the IIED claim is not adequately alleged.

As to the wrongful death claim, Plaintiff alleges the Breed Defendants recklessly exposed C.W. Griffin to COVID-19. See id. at ¶ 108.  The purported exposure and C.W. Griffin's death occurred in Arizona.  As such, it is unclear how the Breed Defendants' actions that allegedly resulted in C.W. Griffin's wrongful death were directed at Hawai`i.  Thus, Counts IV and V are dismissed because Plaintiff has not sufficiently alleged that the Court has personal jurisdiction over the Breed Defendants.  See Fed. R. Civ. P. 12(b)(2) (stating that the defense of "lack of personal jurisdiction" may be asserted in a motion).

### III. **Plaintiff's Second Amended Complaint**

Although Plaintiff filed her Second Amended Complaint before the Court issued its written order regarding the Breed Motion and the Kobata Motion, and the Second Amended Complaint does not comply with Fed. R. Civ. P. 15(a), the Court addresses the Second Amended Complaint because it attempts to cure the deficiencies related to Plaintiff's standing for her claims concerning the Property. See Jones v. L.A. Cent. Plaza LLC, 74 F.4th 1053, 1058 (9th Cir. 2023) ("a jurisdictional issue such as Article III standing may be raised *sua sponte* by the court at any time." (citing Fed. R. Civ. P. 12(h)(3)).  Further, the Second Amended Complaint does not reallege Plaintiff's tort claims against the Breed Defendants, *i.e.*, Counts IV and V in the First Amended Complaint.  Plaintiff, therefore, waives her tort claims against the Breed Defendants insofar as she brings suit in this district court.  See Sechrest v. Ignacio, 549 F.3d 789, 804 (9th Cir. 2008) ("Generally, amendment of a complaint or petition constitutes waiver of any omitted arguments or claims from previous versions of the complaint or petition." (citation omitted)).

In the Second Amended Complaint, Plaintiff alleges she "has a beneficial interest in" the Property.  [Second Amended Complaint at ¶ 28.]  Although not precisely clear, Plaintiff purports to have a beneficial interest in the Property because

she asserts she would have been an heir to the Property, if C.W. Griffin still owned it at the time of his death.  See, e.g., id. at ¶ 28.  After purchasing the Property, C.W. Griffin married Ann Yurick ("Yurick"), and the title to the Property was transferred out of the Trust to C.W. Griffin and Yurick as tenants by the entirety through an apartment deed filed with the BOC/Land Court.  See id. at ¶ 28.  Plaintiff alleges that the apartment deed stated: "'[t]he rights and obligations of the Grantor (Charles W. Griffin) and the Grantee (Charles W. Griffin and Ann V. Yurick) shall be binding upon and inure to the benefit of their respective **heirs**, devisees, personal representatives, successors, and assigns.'"  [Id. (alteration and emphasis in original).]  Plaintiff alleges the language in the apartment deed granted her a beneficial interest in the Property.

 "A tenancy by the entirety is a unique form of ownership in which both spouses are jointly seized of property such that neither spouse can convey an interest alone nor can one spouse's creditor attach the property to satisfy a debt." Traders Travel Int'l, Inc. v. Howser, 69 Haw. 609, 613, 753 P.2d 244, 246 (1988) (citation omitted).  "Additionally, a tenancy by the entirety must be held exclusively by married spouses who alone possess the mutual right of survivorship.  Should the

13

spouses divorce, the property becomes a tenancy in common." Id. at 614–615, 753 P.2d at 247 (citations omitted).

To the extent that Plaintiff alleges the apartment deed conferred upon her a beneficial interest in the Property, she fails to allege a legal interest because the tenancy by the entirety did not confer to her a legal interest in the Property. The Property was jointly owned by C.W. Griffin and Yurick as spouses with the right of survivorship belonging to both C.W. Griffin and Yurick.  Thus, insofar as Plaintiff contends that she has standing to raise claims related to the Property based on an interest created by the tenancy by the entirety, her contention is misplaced.

Further, Plaintiff alleges after C.W. Griffin was purportedly abducted/kidnapped from Hawai`i and moved to Arizona, he was coerced into terminating his marriage with Yurick, and a marital settlement was issued.  See Second Amended Complaint at ¶¶ 30–31.  Plaintiff further alleges that, "[t]o conceal the divorce decree and in particular the marital settlement, the entire case files of the [divorce] proceedings were permanently purged from the public record."  [Id. at ¶ 32.] The files of the divorce proceedings were allegedly purged because the marital settlement would have "returned the [P]roperty to C. W. Griffin."  [Id.]  Although Plaintiff alleges she "had an estate interest in the [P]roperty that should have

14

been returned to C. W. Griffin[,]" [id. at ¶ 46,] she again fails to adequately allege that she had a legal interest in the Property.  She does not allege she was a representative of C.W. Griffin's estate and, although she was C.W. Griffin's daughter, Plaintiff does not allege she was a beneficiary of C.W. Griffin's estate.

Plaintiff states the marital settlement was purged from the public record, but she fails to allege how it was purged, who purged the record, and how she knows the Property was solely transferred to C.W. Griffin from the tenancy by the entirety.  It is unclear whether, at the time of the marital settlement, the Property transferred back to C.W. Griffin through the Trust or some other way.  It is also possible that the tenancy by the entirety became a tenancy in common, which means Yurick would have had a remaining interest in the Property.  See Haw. Rev. Stat. § 509-2(f) ("Upon entry of a decree granting divorce or annulment between the spouses or the termination of the reciprocal beneficiary relationship, . . . the real property shall be treated as held in tenancy in common."); see also Traders Travel Int'l, 69 Haw. at 615, 753 P.2d at 247 ("Should the spouses divorce, the property becomes a tenancy in common." (citation omitted)).

Moreover, Plaintiff's allegations regarding the marital settlement are confusing because she also alleges that

the apartment deed "identifying C. W. Griffin and Ann Yurick as tenants in entirety as legal owners is the **last best legitimate evidence** of ownership of the subject property." [Id. at ¶ 44 (emphasis added).]  Again, however, Plaintiff does not have a legal interest in the Property based on the tenancy by the entirety.  If the apartment deed is the "last best legitimate evidence of ownership of" the Property, see id., she cannot challenge the conveyance of the Property.

Finally, Plaintiff alleges she was deprived of her interest in the Property because Kobata, C.G. Breed, and C.G. Breed's counsel – Margery S. Bronster, Esq. – engaged in a scheme to defraud C.W. Griffin.  Specifically, she states that Kobata, C.G. Breed, and Ms. Bronster committed

> a fraudulent scheme that deprived C. W. Griffin of his entire trust estate without his consent or court order.  C. G. Breed relied on Ms. Bronster's legal advice on how to commit a crime/fraud.  Ms. Bronster relied on Defendant Kobata to use the color of the law to record the void Quitclaim Deed.  In the end, their fraudulent scheme was exposed when Defendant Kobata censored the void TCT [for the Quitclaim Deed] from the Land Court registration book.

[Id. at ¶ 52.]  Plaintiff also alleges: "The record substantiates that C. G. Breed, Ms. Bronster, and Defendant Kobata initiated a deliberately planned and carefully executed scheme to defraud C. W. Griffin of his estate.  Proof of the scheme and its success is conclusive." [Id. at ¶ 56.]  The

Court notes that fraud claims must be alleged with particularity pursuant to Fed. R. Civ. P. 9(b).  See Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc., 63 F.4th 747, 765 (9th Cir. 2023) ("The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." (quotation marks and citation omitted)). The Ninth Circuit has highlighted the importance of the particularity requirement for claims sounding in fraud:

> Because allegations of fraud inescapably carry a degree of moral turpitude, Rule 9(b) imparts a heightened note of seriousness, requiring a greater degree of pre-discovery investigation by the plaintiff, followed by the plaintiff's required particular allegations, thereby protecting a defendant's reputation from frivolous and unfounded allegations and permitting a particularized basis for a defendant to respond to the particularized allegations.

Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc., 998 F.3d 397, 404 (9th Cir. 2021) (citation omitted).  Putting aside Plaintiff's allegations of fraud, she still does not sufficiently allege standing because her allegations concerning the fraudulent scheme affected C.W. Griffin and "**his** entire trust estate."  See Second Amended Complaint at ¶ 52 (emphasis added).  Plaintiff has not adequately alleged a legal interest in C.W. Griffin's trust estate and, therefore, she does not have standing to bring her claims related to the conveyance of the

Property.  As such, the Second Amended Complaint must be
dismissed.

## IV.  **Petition for Change of Venue**

In the Petition, Plaintiff "requests venue for [the
Breed Defendants] be moved to the United States District Court
of Arizona-Phoenix Division."  [Petition at 1.]  Plaintiff's
Petition is improper for multiple reasons.  The Second Amended
Complaint does not reallege Plaintiff's tort claims against the
Breed Defendants and, thus, there are no claims against the
Breed Defendants.  The Second Amended Complaint effectively
removes the Breed Defendants as defendants in this case and, as
such, the claims against the Breed Defendants cannot be
transferred to another district court.  Additionally, because a
"plaintiff [is] the master of the claim," Caterpillar Inc. v.
Williams, 482 U.S. 386, 392 (1987), Plaintiff may file her
claims against the Breed Defendants in the United States
District Court for the District of Arizona on her own accord,
*i.e.*, without this Court's permission (particularly in light of
the analysis *supra* Discussion Section II).  Accordingly, the
Petition is denied.

## V.  **Leave to Amend**

The Court grants in part and denies in part the Breed
Motion and the Kobata Motion.  The Breed Motion is granted
insofar as the claims against the Breed Defendants are

18

dismissed, but the Breed Motion is denied insofar as they are denied without prejudice.  However, because Plaintiff failed to reallege the claims against the Breed Defendants in the Second Amended Complaint, and Plaintiff sought to transfer venue to another district, Plaintiff is not granted leave to amend the claims against the Breed Defendants.  If Plaintiff so chooses, she may file her claims against the Breed Defendants in the United States District Court for the District of Arizona, assuming that district has jurisdiction, or any other district that would have jurisdiction over the Breed Defendants.  The Court notes, however, that it makes no findings as to the merits of any claims that Plaintiff attempted to assert in this case against the Breed Defendants.

The Kobata Motion is granted in part insofar as the claims against Kobata are dismissed due to Plaintiff's lack of standing to challenge the conveyance of the Property, but the Kobata Motion is denied insofar as the dismissal is without prejudice.  Because the Court reviewed Plaintiff's Second Amended Complaint sua sponte, and the Court concludes that Plaintiff again fails to adequately allege standing, the Second Amended Complaint is likewise dismissed.  The dismissal is without prejudice, though, because Plaintiff is proceeding pro se and it is arguably possible for her to cure the defect regarding standing.  The Court cautions Plaintiff that she is

not necessarily entitled to additional amendments of her
complaint, particularly because she fails to allege a core
constitutional requirement concerning the Court's jurisdiction
over the instant case.  But, the Court grants Plaintiff leave to
file a third amended complaint out of an abundance of caution.
See Garity v. APWU Nat'l Labor Org., 828 F.3d 848, 854 (9th Cir.
2016) ("Unless it is absolutely clear that no amendment can cure
the defect, a pro se litigant is entitled to notice of the
complaint's deficiencies and an opportunity to amend prior to
dismissal of the action." (alteration, citation, and internal
quotation marks omitted)).

       If Plaintiff chooses to file a third amended
complaint, she must do so by **September 25, 2023.**  Plaintiff's
third amended complaint must include all of the claims that she
wishes to allege, and all of the allegations that her claims are
based upon, even if she presented them in her original
complaint, First Amended Complaint, or Second Amended Complaint.
She cannot incorporate any part of her original complaint, First
Amended Complaint, or Second Amended Complaint by merely
referring to them.  If Plaintiff fails to file her third amended
complaint by **September 25, 2023,** or if the third amended
complaint fails to cure the defect identified in this Order, her
claims will be dismissed with prejudice – in other words,
without leave to amend.  Plaintiff would then have no remaining

20

claims in this district court, and the Clerk's Office would be directed to close the case.

Finally, Plaintiff did not follow the Court's direction in the 6/30 EO. As such, Plaintiff is cautioned that additional failures to adhere to either (i) the deadlines, directions, or orders issued in this case by this Court or the magistrate judge, (ii) the Federal Rules of Civil Procedure, or (iii) the Local Rules may lead to sanctions, including monetary sanctions, such as an award of an opposing party's attorney's fees, or the dismissal of her case. See Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 107 (2017) (stating federal courts possess the inherent authority "to fashion an appropriate sanction for conduct which abuses the judicial process" (quotation marks and citation omitted)); see also Fed. R. Civ. P. 11; Local Rule LR11.1.

## CONCLUSION

On the basis of the foregoing, the Court HEREBY GRANTS IN PART AND DENIES IN PART: Kobata's Motion for Partial Dismissal of Plaintiff's First Amended Complaint Filed March 17, 2023, with Prejudice, filed March 29, 2023; and the Breed Defendant's Motion to Dismiss First Amended Complaint, filed March 31, 2023.

The Kobata Motion is GRANTED to the extent that Counts I, II, and III are DISMISSED, but it is DENIED to the

extent that the dismissal is WITHOUT PREJUDICE.  The Breed
Motion is GRANTED to the extent that Counts IV and V are
DISMISSED, it is DENIED to the extent that the dismissal is
WITHOUT PREJUDICE.

Plaintiff's Second Amended Complaint is DISMISSED sua
sponte, but the dismissal is WITHOUT PREJUDICE.  Plaintiff is
GRANTED leave to amend her claims against Kobata related to the
Property.  Plaintiff is DENIED leave to amend insofar as she is
not permitted to reallege claims against the Breed Defendants.
However, this Order does not prevent Plaintiff from filing a new
action against the Breed Defendants in a district court that has
personal jurisdiction over them.  Accordingly, Plaintiff is
GRANTED leave to file a third amended complaint against Kobata
by **September 25, 2023.**  The third amended complaint must comply
with the terms of this Order.

Finally, Plaintiff's Petition for Change of Venue,
filed August 2, 2023, is DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 25, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

JANIS GRIFFIN, ETC. VS. CHARLES G. BREED, ET AL; CV 22-00503
LEK-RT; ORDER:  GRANTING IN PART AND DENYING IN PART DEFENDANT
LESLIE KOBATA'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S
FIRST AMENDED COMPLAINT FILED MARCH 17, 2023, WITH PREJUDICE;
GRANTING IN PART AND DENYING IN PART DEFENDANTS C.G. BREED, C.R.
BREED, WHITNEY BREED, AND JANIS BREED'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT; SUA SPONTE DISMSSING PLAINTIFF'S SECOND
AMENDED COMPLAINT; AND DENYING PLAINTIFF'S PETITION FOR CHANGE
OF VENUE